UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:25-cr-00104-LEW |
| | ) | |
| DARRELL NELSON, | ) | |
| | ) | |
| Defendant | ) | |

### ORDER ON DEFENDANT'S MOTION TO SUPPRESS

Defendant Darrell Nelson has been charged with one count of possession with intent to distribute cocaine base. This matter is before the Court on Defendant's Motion to Suppress (ECF No. 61). For the reasons that follow, Defendant's Motion is DENIED.

### BACKGROUND

The following facts are drawn from the parties' briefing and the evidentiary hearing on Defendant's Motion. On December 3, 2024, law enforcement officers from the Scarborough Police Department established surveillance at a residence on Burnham Road in Scarborough, in response to a tip they had received the day before that the occupant was selling cocaine and fentanyl from that address and was in possession of a large number of firearms. At approximately 10:00 a.m., Officers Brian Nappi and Christopher Gerossie observed a black male in a white Jeep Cherokee pull into the driveway of the residence, where the driver remained inside the vehicle for over 40 minutes. The officers ran the Jeep's plates and learned that its registered owner was Defendant. Officer Nappi was familiar with Defendant from a 2016 DEA task force investigation that resulted in

Defendant's conviction for a drug trafficking offense.  Officer Nappi also learned that Defendant was on both federal supervised release and subject to state bail conditions, and that his driver's license was suspended.  Officer Nappi understood Defendant's bail conditions to allow searches of his vehicle and person upon reasonable articulable suspicion.[1]

Defendant pulled out of the driveway at 10:46 a.m., without having left his vehicle, and began driving south.  Officers then noticed that one of the Jeep's front daytime running lights was out.  They alerted their supervisor, Sergeant Andrew Flynn, who was also in the vicinity.  Officer Nappi requested a traffic stop.

Sgt. Flynn pulled Defendant over on Burnham Road.  He asked Defendant where he was coming from and where he was going.  Defendant responded that he was coming from visiting a friend named Vanessa at the Burnham Road residence and was going to pick up his girlfriend on Warren Avenue.  While talking with Defendant, Sgt. Flynn noticed three cell phones inside the Jeep.  He asked Defendant to step out of the vehicle and patted him down for weapons.  The pat down revealed no weapons, but Sgt. Flynn reported that he felt a soft baggie in Defendant's front right pocket.  Sgt. Flynn handcuffed Defendant and placed him under arrest for operating a vehicle with a suspended license and violating his bail conditions, but did not communicate this to Defendant at that time, citing a concern that doing so would escalate the situation at the risk of his personal safety because he was

---

[1] Defendant notes that this search condition was limited to circumstances producing "articulable suspicion" of his "use or possession of alcohol."  Mot. at 2 n.2.  The condition reads in full: "Bond regarding alcohol, illegal drugs and their derivatives, marijuana or marijuana products, I will submit to searches of my person, vehicle and residence and, if applicable, to chemical tests upon articulable suspicion."  Gov't Hr'g Ex. 2. The conditions only prohibit use or possession of alcohol.  *Id.*

(at least briefly) alone with Defendant on an isolated stretch of Burnham Road with poor radio reception.  He removed a baggie containing ground up marijuana from Defendant's front right pocket.

From the tip about drug activity at the Burnham Road residence, Defendant's prior drug trafficking conviction, his observation of three cell phones in the Jeep, his disbelief that anyone called Vanessa lived at the Burnam Road residence,[2] and the fact that Defendant had not referred to the person he understood to be the occupant of that residence as such, Sgt. Flynn suspected Defendant was involved in the drug trafficking activity he believed was taking place at the Burnham Road residence and concluded that he had reasonable articulable suspicion to conduct a search of Defendant's vehicle based on his conditions of release.[3]  Officer Gerossie and Sgt. Flynn conducted that search and found nothing of evidentiary value.

Sgt. Flynn testified that at this point, he contacted another officer to respond to the scene to transport Defendant to the Cumberland County Jail, because his vehicle was not equipped to do so.[4]  Sgt. Flynn then conducted a more thorough search of Defendant's person and clothing.  As he began to pat down the area near Defendant's underwear line, Sgt. Flynn felt a hard mass in Defendant's buttocks through his sweatpants and asked

---

[2] Though not relevant to the disposition of this motion, Defendant established at the hearing that an individual named Vanessa was arrested at the Burnham Road residence later that day.

[3] Whether this reading of Defendant's conditions was the correct reading is disputed, but resolution of that dispute is not necessary for the disposition of this motion.

[4] Officers Nappi and Gerossie both testified that transportation was arranged later, after the search of Defendant's person revealed the drug evidence Defendant seeks to suppress.

Officer Nappi to remove it.  Officer Nappi testified that he could see the bulge and plastic packaging protruding from Defendant's waistband.  Officer Nappi then pulled the waistband of Defendant's sweatpants towards him and down a couple of inches and retrieved a fist-sized clear plastic baggie containing what officers recognized to be cocaine base that was protruding from in between Defendant's buttocks.  Officer Nappi removed the plastic baggie by pulling on the exposed part of it and was able to do so in seconds.  At no point were Defendant's genitalia exposed to anyone.  If his buttocks were exposed at all, that exposure would have lasted only seconds and involved only a few inches of skin.[5] Lab reports indicate that the substance inside that plastic baggie was approximately 142.5 grams of cocaine base.  After this search, another officer arrived on scene to transport Defendant to the Cumberland County Jail.

## DISCUSSION

The Fourth Amendment prohibits "unreasonable searches and seizures."  Const. Amend. IV.  Ordinarily, a search conducted without prior judicial authorization in the form of a signed warrant is unreasonable and evidence seized pursuant to such a search will be suppressed.  One longstanding exception to this rule applies to "warrantless searches incident to an arrest, during which law enforcement may conduct 'a full search of the person' of an arrestee."  *United States v. Mulkern*, 49 F.4th 623, 629 (1st Cir. 2022) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)).  "[W]hether a formal arrest

---

[5] This account of the search is drawn from the testimony of the three officers involved in the search, who testified consistent with each other.  I find that testimony credible, despite Defendant's contention—with which I do not necessarily agree—that it is contradicted by an incident report stating that Officer Nappi "pulled down" Defendant's pants.

occurred prior to or followed 'quickly on the heels' of the challenged search does not affect the validity of the search so long as the probable cause existed prior to the search." *United States v. Bizier*, 111 F.3d 214, 217 (1st Cir. 1997) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)); *see also United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004). And a warrantless arrest is lawful if law enforcement has "probable cause to believe that the suspect has committed or is committing a crime." *United States v. Martinez-Molina*, 64 F.3d 719, 726 (1st Cir. 1995).

Defendant "concedes that the Scarborough Police Department . . . had probable cause to *stop and arrest* him for operating a vehicle after suspension." Reply at 1. Officers learned about Defendant's suspended license early in the chain of events at issue here, and that was all of the probable cause that was needed to place him under arrest and search his person. There is perhaps some remaining ambiguity about when, precisely, Defendant was placed under arrest, in light of Sgt. Flynn's decision to do so silently. And the record reveals some equivocation about what officers subjectively believed justified their actions at various points in the encounter. But well before Sgt. Flynn and Officer Nappi effected the search that resulted in the recovery of the drug evidence at issue here, they had ample probable cause to arrest Defendant for operating a vehicle without a valid license and, in doing so, violating his bail conditions. *See Smith*, 389 F.3d at 951 ("So long as an arrest that follows a search is supported by probable cause independent of the fruits of the search, the precise timing of the search is not critical."). Moreover, Sgt. Flynn credibly testified that he had decided that Defendant would be arrested and taken into custody before the drugs were discovered. Indeed, Sgt. Flynn testified that he had already arranged

5

Defendant's transportation to Cumberland County Jail, prior to initiating the full search.[6] At the very least, prior to the search at issue, Defendant was already in handcuffs and not free to leave.

Defendant contends that, for the search to pass constitutional muster, officers must have also reasonably suspected that he was armed and dangerous. *See* Mot. at 6-8 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)); *see also* Reply at 3-4. This contention would be correct, if Defendant had been only temporarily detained for an investigative stop based on a reasonable suspicion that he was engaged in criminal activity. *See Terry*, 392 U.S. at 27. But officers had already developed probable cause to arrest Defendant for operating a vehicle with a suspended license and were therefore justified in conducting "a full search of [his] person" incident to that arrest. *Robinson*, 414 U.S. at 235. As the Supreme Court explained in *Robinson*:

> The authority to search the person incident to a lawful custodial arrest, while based on the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search . . . .

*Id*. Indeed, the Court in *Robinson* specifically rejected an invitation "to qualify the breadth of the general authority to search incident to a lawful custodial arrest on an assumption that persons arrested for the offense of driving while their licenses have been revoked are less

---

[6] Although Sgt. Flynn's testimony was not entirely consistent with that of Officers Nappi and Gerossie on the timing of these arrangements, I am inclined to credit Sgt. Flynn's account above theirs on this point, as Sgt. Flynn testified that he was the one who made the call to arrange Defendant's transportation.

likely to possess dangerous weapons than are those arrested for other crimes," concluding that the greater risk to officer safety posed by "the extended exposure which follows the taking of a suspect into custody" was "an adequate basis for treating all custodial arrests alike for the purposes of search justification." *Id*. at 234-35.[7]

Of course, a search incident to arrest "must [still] be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." *Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir. 1997) (quoting *United States v. Edwards*, 415 U.S. 800, 808 n.9 (1974)). "The reasonableness of an invasive search depends on whether the totality of the circumstances justifies the degree of the intrusion." *United States v. Rasberry*, 882 F.3d 241, 251 (1st Cir. 2018). "To justify the search of a particularly intimate area, an officer must, at a minimum, have reasonable suspicion that the person detained is hiding contraband there." *Id*. "[E]ncounter[ing] a suspicious object" in an intimate area suffices. *Id*. In addition, however, the search ought not to be "conducted in a needlessly degrading or humiliating fashion." *Id*. Here, Sgt. Flynn encountered a suspicious object when he patted down Defendant's buttocks area over his clothes, which was adequate justification for the investigation that followed. And Defendant's attempt to characterize the encounter as a roadside strip search is not supported by the record. All three officers testified that

---

[7] I am sympathetic to the impulse underlying Defendant's argument on this point—that surely it cannot be reasonable, under the Fourth Amendment, to subject a person arrested for operating a vehicle with a suspended license to a search for contraband or weapons when there is not necessarily any reason to believe that either will be found. On this point, it is perhaps worth noting that *Robinson* itself involved a search incident to an arrest for operating a vehicle with a revoked operator's permit, where there was no additional reason to believe that the defendant was in possession of any weapons or contraband that would be discovered through a search of his person. *See Robinson*, 414 U.S. at 220-21. The Supreme Court specifically rejected there the same argument Defendant has made here.

Defendant's genitalia and buttocks remained clothed. If Defendant's buttocks were exposed, which seems vanishingly unlikely based on the credible testimony, that exposure was minimal and momentary. I see nothing unreasonable in the manner in which this aspect of the search was conducted.

Because I conclude that this search was incident to Defendant's lawful arrest and conducted in a reasonable manner, I do not reach the parties' arguments on the question of whether the contraband would have been inevitably discovered through the Cumberland County Jail's intake process.

## CONCLUSION

Defendant's Motion to Suppress (ECF No. 61) is DENIED.

SO ORDERED.

Dated this 13th day of August, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge

8